IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEQUAN STOKES,

    *Petitioner*,

    v.

UNITED STATES OF AMERICA,

    *Respondent.*

Criminal No. ELH-18-0316
Related Civil No.: ELH-19-2493

## MEMORANDUM OPINION

In this post-conviction matter, Petitioner Dequan Stokes, who is self-represented, has filed a motion under 28 U.S.C. § 2255, challenging his convictions for unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of drug trafficking, under 18 U.S.C. § 924(c). ECF 42 (the "Petition"). The convictions followed Stokes's entry of a guilty plea to both offenses, pursuant to a Plea Agreement (ECF 26).

Stokes asserts that his lawyer rendered ineffective assistance of counsel. He complains, *inter alia*, that his attorney, an Assistant Federal Public Defender ("AFPD"), failed to pursue a motion to suppress evidence recovered from a warrantless search of his vehicle, and failed to seek suppression of custodial statements that he made to investigating officers, obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Further, Stokes alleges that, even if he had been unsuccessful in regard to the suppression motions, his lawyer could have negotiated a conditional plea under Fed. R. Crim. P. 11(a)(2), to preserve his appellate rights. ECF 42 at 11. And, he contends that his attorney failed to recognize and discuss with him his actual innocence as to the charge under 18 U.S.C. § 924(c), and was derelict for failing to advise him to proceed to trial, rather than plead guilty.

The government vigorously opposes the Petition (ECF 70). It has also submitted several exhibits.

In addition, Stokes has filed several other motions. These include a "Motion To Compel Counsel To Produce Client File" (ECF 55); a "Motion To Order the Government To Produce" (ECF 61); and a "Motion For Discovery And Leave For Extension of Time" (ECF 74). The government's opposition to Stokes's discovery request is docketed at ECF 76. Stokes has replied. ECF 79.

No hearing is necessary to resolve the Petition or the motions. For the reasons that follow, I shall deny the Petition and the motions.

## I.      Factual and Procedural Background

### A.

Four members of the Baltimore City Police Department were on patrol in an unmarked car at about 10:00 p.m. on March 10, 2018, in the Hampden neighborhood of Baltimore City. ECF 26 at 11. Hampden is a trendy area populated with stores, bars, restaurants, and patrons. *Id.* The officers saw Stokes in the driver's seat of a Dodge SUV, which had a Georgia license plate, parked on West 36th Street, known as "The Avenue." *Id.* They then saw Stokes exit the vehicle and run into a restaurant, Holy Frijoles. *Id.* The officers became suspicious, parked their car, and looked into the SUV. There, they saw, in plain view on the driver's seat, a plastic vial containing a white, "rock-like substance." *Id.* Stokes was eventually located at Frazier's Bar, a restaurant across the street from Holy Frijoles. He was arrested and taken back to the SUV. *Id.*

The police asked Stokes for the key to the SUV, but Stokes denied that he had it. *Id.* Instead, he claimed he had given the key to "S.M." *Id.* at 12. The police subsequently located S.M. at Frazier's Bar and he produced the key to the SUV. *Id.*

Thereafter, the police searched the vehicle driven by defendant. The search led to the recovery from the center console of a black Hi-Point JCP .40 caliber handgun with 10 live rounds in the magazine and one in the chamber. *Id.* In addition, over sixty vials of cocaine were recovered from the vehicle, weighing about 6.2 grams. *Id.* A search of defendant led to the recovery of $357. *Id.* The items recovered during the searches are depicted in ECF 70-7.

Stokes was indicted on June 7, 2018. ECF 1. A superseding indictment was filed on July 12, 2018. ECF 4. In particular, Stokes was charged with possession of a firearm by a prohibited person, under 18 U.S.C. § 922(g)(1) (Count One); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Two); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Three).

On September 14, 2018, defense counsel filed a motion to suppress statements (ECF 21) and a motion to suppress evidence obtained during the search of the vehicle. ECF 22. Those motions were never adjudicated, however. Instead, on November 21, 2018, pursuant to a Plea Agreement (ECF 26), Stokes entered a plea of guilty to Counts Two and Three of the Superseding Indictment. ECF 29. His plea was entered under Fed. R. Crim. P. 11(c)(1)(C), calling for a total period of incarceration ranging from at least 84 months but not more than 120 months. *Id.* ¶ 9.

The Plea Agreement also included a stipulation of facts, from which the factual summary set forth above is derived. *See* ECF 26 at 11-13. In the factual summary, Stokes admitted that he possessed the cocaine with the intent to distribute, and that he possessed the firearm in relation to the drug trafficking charge set forth in Count Two. *Id.* at 12-13.

The rearraignment transcript is docketed at ECF 64. The government included an excerpt at ECF 70-3. The plea colloquy reflects that the defendant was sworn (*id.* at 2), and he was also

advised of the significance of the oath.  ECF 64 at 4.[1]  In response to the Court's inquiry, the defendant indicated that he had discussed his case fully with his lawyer, including any defenses he might have, as well as his right to appeal if convicted at a trial. *Id.* at 5-6.  Moreover, he was satisfied with counsel's representation.  *Id.* at 6.

The Court also reviewed the terms of the Plea Agreement with Stokes, at length, and thoroughly advised Stokes of his rights and the waiver of them.  This included the right to present defenses to the charges.  *Id.* at 28.  Notably, defendant was advised that, by pleading guilty, he waived all defenses to the charges. *Id.* at 29.  He indicated that he understood.  *Id.*

In addition, the Court established with Stokes that he agreed with the Statement of Facts in the Plea Agreement.  *Id.* at 14.  And, after the government presented the factual summary (*id.* at 33-34), the defendant agreed that the factual summary was accurate.  *Id.* at 35.

Perhaps presciently, after the Court reviewed the defendant's rights with him, the Court said, *id.* at 30-31:

> THE COURT:  Every now and then, sir, somebody comes back and claims he or she didn't get it, they thought there would be some hearing on a very important defense or some ruling by the Court that would go their way and they didn't realize that wasn't happening.  So I always like to pause just about now to go over it one more time.  Without reference to any of the particulars of your case, I'll just make up some examples to illustrate my point.
>
> If you had a claim, sir, *you were subjected to an illegal search* or unlawful wiretap *or were unlawfully interrogated*, whatever or how many claims you might have, your lawyer could file as many motions as you and she thought proper, challenging whatever it is about the case that you disagreed with.  Do you understand?
>
> DEFENDANT:  Yes, ma'am.

---

[1] The government observes, based on the defendant's lengthy prior record, that he is "a highly experienced veteran of the criminal justice system who was thoroughly familiar with guilty plea proceedings."  ECF 70 at 7.

At sentencing on January 31, 2019 (ECF 37), the government sought a sentence of ten years' imprisonment.   ECF 70 at 10.   Defense counsel submitted a powerful sentencing memorandum (ECF 35) and requested an 84-month sentence.

The Court was persuaded by defense counsel, and imposed a term of imprisonment of 24 months as to Count Two, and the mandatory minimum sentence of 60 months, consecutive, as to Count Three, for a total term of imprisonment of 84 months.   *See* ECF 39. That sentence corresponded to the bottom of the C plea range.   And, it was far below the Guidelines range.

No appeal was noted.   However, about eight months after sentencing, on August 28, 2019, Stokes filed his Petition.   ECF 42.   By Order of August 29, 2019, I directed the government to respond within 60 days.   ECF 43.

Additional facts are included in the Discussion, *infra*.

**B.**

On October 9, 2019, the government filed a motion to require the AFPD to respond to inquiries from the government with respect to Petitioner's allegations of ineffective assistance of counsel, and to extend the time for the government's response to the Petition.   ECF 48.   The government included a proposed Order (ECF 48-2), along with documents filed collectively as one exhibit.   ECF 48-1.

In the motion, the prosecutor represented that he had previously contacted defense counsel to determine whether she would meet voluntarily with the government concerning Mr. Stokes's allegations pertaining to her performance.   ECF 48 at 2.   According to the government, the AFPD indicated that she would testify at an evidentiary hearing, but she declined to otherwise provide information to the government responsive to its request.   *Id.*   And, the prosecutor advised that judges in this District had granted similar requests.   *See* ECF 48.

By October 28, 2019, when the AFPD had not responded to the motion, I assumed that the AFPD had no objection to the request.  Accordingly, I signed the proposed Order submitted by the government, with a minor modification.  ECF 49.

The next day, October 29, 2019, the Office of the Federal Public Defender ("OFPD") submitted a letter to the Court (ECF 50, "Motion to Reconsider"), supported by an exhibit (ECF 50-1), asking the Court to reconsider its ruling.   And, on November 4, 2019, the OFPD supplemented the Motion to Reconsider, again asking the Court to revisit its Order compelling defense counsel to respond to the government in regard to allegations in the Petition alleging ineffective assistance.  ECF 51.

The government opposed the Motion to Reconsider.  ECF 52.  It claimed, *inter alia*, that Stokes had waived the attorney-client privilege as to the specific matters raised by him concerning his claim of ineffective assistance of counsel.

Stokes seemed to agree with the government.  On November 25, 2019, he filed a "Motion To Compel Counsel To Produce Client File."  ECF 55.  There, Stokes "move[d] to support the government's motion in opposition to the Federal Public Defender's request."  *Id.* at 1; *see also id.* at 2.  Stokes sought the production of his file "for the Court's consideration."  ECF 55 at 1. And, he expressly "join[ed] the government's motion in opposition to the OFPD objection to this Court's order, and request[ed] those materials be produced . . . ."  *Id.* at 2.

In a Memorandum and Order of November 27, 2019 (ECF 56, ECF 57), I agreed with the government that further exploration of the performance of defense counsel and the legal advice provided to Stokes by the AFPD would be necessary to resolve the claims in the Petition.  *See* ECF 56 at 7; *see also* ECF 52 at 6.  However, I also found that any waiver of privilege by Stokes is necessarily narrow.  *See United States v. Nicholson*, 611 F.3d 191, 217 (4th Cir. 2010).  Moreover,

the Court sought to consider the ethical obligations of defense counsel, embodied in Maryland Rule 19-301.6.

Ultimately, I determined that my prior Order was considerably broader than necessary, and ran afoul of the limited waiver of privilege. ECF 56 at 7. I stated, *id.*: "It is neither necessary nor appropriate for the AFPD 'and any other relevant [OFPD] personnel to respond to inquiries from, and to assist the government in preparing for submission to the Court an affidavit addressing' Stokes's claims." ECF 56 at 7 (quoting ECF 49 at 2). Therefore, by Order of November 27, 2019 (ECF 57) I granted the Motion to Reconsider (ECF 50). And, I vacated my Order of October 28, 2019 (ECF 49).

In my Order of November 27, 2019 (ECF 57), I directed the AFPD to submit an affidavit addressing Stokes's specific claims of ineffective assistance, subject to various restrictions. *Id.* ¶¶ 4, 5, 6. In response to this Court's Order, the AFPD provided a two-page Affidavit. *See* ECF 70-2. In addition, she provided heavily redacted notes pertaining to her meetings with Stokes. *Id.* at 3-7.

In his submission at ECF 55, Stokes also sought an order directing his trial counsel to return case files and "Jencks/Brady material" to him. *Id.* at 1. And, he sought his entire client file. *Id.* at 2-3, 5.

Subsequently, Stokes indicated that his trial attorney wrote to him on December 10, 2019, advising that she is not permitted to send discovery materials or the Presentence Report to him while he is incarcerated in the Bureau of Prisons. *See* ECF 61 at 1. In any event, some of the AFPD's client file has been produced as exhibits in connection with the § 2255 litigation, and thus provided to Stokes. *See* ECF 70-2. And, on April 23, 2021, the Court directed the AFPD to provide Stokes with a copy of the content of his client file, to the extent feasible. *See* ECF 80.

In the Discussion, *infra*, I refer to the Affidavit of defense counsel and her notes concerning her meetings with Stokes. But, even without consideration of the limited information provided by defense counsel, I would reach the same legal conclusions concerning the Petition: it has no merit.

## II.     Legal Standards

### A.

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under § 2255, the Petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). And, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). A failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255

motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391 (4th Cir. 2009).

However, there is no procedural default as to claims concerning ineffective assistance of counsel. Moreover, such claims ordinarily are not litigated on direct appeal. Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010); *see also United States v. Ladson*, 793 Fed. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam). Generally, such claims are litigated in a § 2255 action, to allow for development of the record. *Massaro v. United States*, 538 U.S. 500, 504-06 (2003); *Ladson*, 793 Fed. App'x at 203.

In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by

lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same).

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *United States v. Mayhew*, ___ F.3d ___ 2021 WL 1522130 at *3 (4th Cir. Apr. 19, 2021); *see United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Ordinarily, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a *colorable* Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim[.]" *Mayhew*, 2021 WL1522130, at *3 (emphasis added). If the district court "denies relief without an evidentiary hearing," the appellate court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261 (4th Cir. 2020).

In my view, no hearing is necessary because, as discussed below, no colorable Sixth Amendment claim has been presented.

**B.**

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to the effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States*

*v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020); *Akande*, 956 F.3d at 260; *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017).   First, the petitioner must show that counsel's performance was deficient.   Second, the petitioner must show that he was prejudiced by the deficient performance.   *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013). The petitioner must prove his claim by a preponderance of the evidence.   *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

The first *Strickland* prong, also known as the "performance prong," relates to professional competence.   The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."   *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has recognized that the "first prong sets a high bar."   *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149.   In *Padilla*, the Court stated, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task."   Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally

competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted).  Consequently, the performance

prong is "'difficult'" to establish.  *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting

*James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made

errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth

Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687).  And, "the *Strickland*

standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, because "the standard

of judging counsel's representation is a most deferential one." *Id.*  Indeed, "[k]eenly aware of the

difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that

courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at

689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*,

781 F.3d 114, 122 (4th Cir. 2015).

Notably, a claim of ineffective assistance is evaluated in light of "the strength of case law

as it existed at the time of allegedly deficient representation."  *Palacios*, 982 F.3d at 924; *see*

*United States v. Carthorne*, 878 F.3d at 466.  Thus, "[t]o avoid the distorting effects of hindsight,

claims under *Strickland's* performance prong are 'evaluated in light of the available authority'" at

the relevant time.  *United States v. Morris*, 917 F.3d 818, 823 (4th Cir 2019) (citation omitted).

To be sure, counsel "are obliged to make [] argument[s] that [are] sufficiently foreshadowed in

existing case law," but counsel is not deficient "for failing to predict" changes in the law.  *Id.* at

824 (alterations in *Morris*; internal quotation marks omitted).

Under the second *Strickland* prong, the petitioner must show that his attorney's deficient

performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice

prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## C.

In evaluating the claims at issue, the Court is mindful that a plea agreement "is an essential aspect of the administration of criminal justice . . . ." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011).

The plea process is governed by Fed. R. Crim. P. 11. When a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). Indeed,

"a defendant's solemn declarations in open court affirming a [plea] agreement . . . 'carry a strong presumption of verity.'"  *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74). Therefore, conclusory allegations in a § 2255 petition that are contrary to testimony provided at a Rule 11 hearing are "palpably incredible and patently frivolous or false."  *Lemaster*, 403 F.3d at 222.

Of relevance here, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson,* 397 U.S. 749, 771 (1970); *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019); *see also Frye*, 566 U.S. at 140-44; *Lafler*, 566 U.S. at 162.  In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court explained that, "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Id.* at 56 (citing *McMann*, 397 U.S. at 771).  And, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Moreover, the prejudice prong of the *Strickland* test is slightly modified in the context of plea bargaining.  *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988).  In *Hooper*, the Fourth Circuit explained, *id.* (quoting *Hill*, 474 U.S. at 59):

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified.  Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Accord Burket v. Angelone,* 208 F.3d 172, 189 (4th Cir. 2000).

The Fourth Circuit has acknowledged that, on post-conviction, a defendant who has pleaded guilty "has an incentive to claim, in retrospect, that the result of the plea process would

15

have been different regardless of whether that claim is, in fact, true." *Id.*; *see Lee v. United States*, ___ U.S. ___, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have [pled] but for his attorney's deficiencies."). Therefore, "to prevent criminal defendants with bargainer's remorse from simply claiming they would not have taken a deal but for a bit of bad advice," the defendant must "provide evidence of [his] sincerity." *Murillo*, 297 F.3d at 816. In particular, the defendant "must point to *evidence* that demonstrates a reasonable probability that, with an accurate understanding of the implications of pleading guilty, he would have rejected the deal." *Id.* (emphasis added).

To be sure, in the context of a plea bargain, "the defendant is the master of the outcome." *Murillo*, 927 F.3d at 815. Notably, "[t]he prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence." *Id.* To this end, "plea agreement language and sworn statements must be considered in their context[.]" *Id.* at 217; *see Lemaster*, 403 F.3d at 221-22.

As indicated, the defendant has the burden to establish a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty. *Murillo*, 927 F.3d at 817. *Hooper*, 845 F.2d 471, is illustrative.

In that case, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472. However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the district court denied. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty.  The Court was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time.  *Id.* at 475-76.  Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding.  *Id.*

### III.  Discussion

### A.

In its opposition, the government's frustration is palpable.  Given the extremely serious penalties that the defendant faced if convicted of all charges, coupled with what it correctly characterizes as superb performance by the AFPD, ECF 70 at 25, the government repeatedly asserts that defendant is merely trying to "weasel out" of his guilty plea and the obligations he knowingly accepted.  *Id.* at 10, 19, 25 n.6.

According to the government, in exchange for the defendant's guilty plea, Stokes "received very substantial concessions."  ECF 70 at 9.  In this regard, the government points out that it did not insist on a guilty plea to Count One, the unlawful possession of a firearm charge, in violation of 18 U.S.C. § 922(g)(1).  Had Stokes been convicted on this charge, his multiple prior felony narcotics convictions would have rendered him an armed career criminal, for which he would have faced a mandatory minimum term of 15 years' imprisonment on Count One alone.  *See* 18 U.S.C. § 924(e)(1).

17

Moreover, the government points out that, even without a conviction as to Count One, Stokes's multiple, prior narcotics distribution convictions qualified him as a Career Offender under 18 U.S.C. § 994(h) and U.S.S.G. § 4B1.1, with a Criminal History Category of VI. *See* ECF 41, ¶¶ 37, 38, 39, 42, 43. As a result, as to the two counts to which the defendant pleaded guilty, his sentencing Guidelines called for a sentence far in excess of the negotiated C plea. The government attributes its willingness to agree to the C plea range to the talent and persuasiveness of defense counsel.

## B.

Within in his first contention, Stokes asserts multiple claims. He argues that his lawyer "was ineffective for failing to suppress [statements] due to a *Miranda* violation and [the] illegal search and seizure" of the vehicle. ECF 42 at 5. Stokes observes that he was questioned at the scene of the arrest, without having been advised of his *Miranda* rights. *Id.* at 6-10. In particular, he states that he was asked for the key to the vehicle, and that inquiry constituted interrogation. *Id.* at 8. He also contends that any statement he made as to ownership of the vehicle was illegally obtained. *Id.* at 9. Further, he argues that the search of the SUV was unlawful.

According to Stokes, "if counsel would have moved to suppress, it is likely that Mr. Stokes would have prevailed . . . ." *Id.* at 10. In his view, his motions "had a high probability of success" and, in that event, the outcome of the case would have been entirely different. *Id.* at 12.

To be clear, the AFPD *did* move to suppress as to statements of the defendant as well as the search of the vehicle. *See* ECF 21, ECF 22; *see also* 70-1. Thus, Stokes is flatly wrong regarding the claim that his lawyer failed to move to suppress.

Defense counsel met with Stokes on August 9, 2018, August 30, 2018, September 21, 2018, and October 11, 2018. ECF 70-2 (Affidavit) at 1-2.

18

On August 9, 2018, the AFPD discussed with Stokes the proximity of the firearm to the cocaine. ECF 70-2 at 1, ¶ 3. This is significant in regard to the charge under 18 U.S.C. § 924(c).

According to defense counsel's notes, on August 30, 2018, she discussed "Miranda issues" and "REOP in the car." *Id.* at 5. "REOP" is most likely an abbreviation for "reasonable expectation of privacy."

Further, the AFPD represents that on September 21, 2018, she discussed with Stokes the failure of the BPD to provide him with *Miranda* warnings. *Id.* at 1. She told him that there was a "possibility that he could have the statements he made concerning the key suppressed based on the officers' failure to advise him of his *Miranda* rights, but that there was a risk that the Court would hold that the evidence in the car was not the fruits of that [*Miranda*] violation." *Id.* ¶ 6. Counsel's meeting notes for that date are consistent with her Affidavit. The notes state, *id.* at 6: "Told him that he might have a shot of having the statement that he gave regarding the whereabouts of the key suppressed (no Miranda), but [S.M.] may break the chain . . . may not have even needed [S.M.] to get into the car because the drugs were visible." In other words, the AFPD indicated that, even if defendant was successful as to the motion to suppress his statements, this would not necessarily lead to suppression of the gun and the drugs found in the vehicle.

Also at the meeting on September 21, 2018, the AFPD and defendant watched the police body camera video and discussed sentencing issues, including the potential mandatory minimum sentences, as well as career offender and armed career criminal status. ECF 70-2 at 2; 6. In particular, the AFPD's notes for September 21, 2018, indicate: "Discussed mandatory minimums (15 on ACC gun charge, 5 on 924(c))." *Id.* at 6. Further, the notes indicate that counsel discussed the Guidelines, including "ACCA/CO issues," *i.e.*, armed career criminal act and career offender

status.  On that date, according to the AFPD's notes, Stokes "authorized" the AFPD "to get a plea offer from AUSA."  *Id.*

The AFPD discussed the Guidelines with Stokes on October 11, 2018.  ECF 70-2 at 2, ¶ 7. She compared "after trial" and the C plea, both as to "ACC" and "non-ACC . . . ."  *Id.* at 7.  This suggests that the defendant was advised of the sentencing risk he faced if he went to trial and was convicted.

The AFPD had no recollection of advising the defendant that he had an actual innocence defense.  ECF 70-2 at 2, ¶ 8.  Nor did she discuss a conditional guilty plea with him.  *Id.* ¶ 9.

At the very least, for the reasons stated by the government in its opposition, defendant was not likely to prevail with regard to the motion to suppress the search of the vehicle.  *See* ECF 70 at 26-28.  In this regard, the police saw defendant driving the SUV.  After Stokes left the vehicle, he ran into a restaurant.  The officers then looked inside the vehicle and saw drugs on the driver's seat, which defendant had occupied moments earlier.  As the government puts it, defense counsel "focused like a laser" on that critical issue.  ECF 70 at 28.  And, to the extent that defendant claimed the vehicle was not his, then he might not have had a reasonable expectation of privacy in the SUV, which defense counsel also discussed with Stokes.  Further, the gun was found in the center console, immediately adjacent to the driver's seat.  Other drugs were in the SUV.  And, there is no indication of any other occupant in the vehicle at the relevant time.

In fact, in ECF 74, Stokes acknowledges that the police had probable cause to search the vehicle; he "so stipulates."  *Id.* at 6.  But, he disputes that there was any evidence that he was the driver.  *Id.*  Moreover, Stokes maintains that the vehicle was a rental and his "name was not on it." *Id.* at 7.  Therefore, he asserts that he could not be linked to the vehicle.  And, he complains that his lawyer was ineffective because she did not "reach out to the person on the rental agreement."

Further, he claims that the police could not rely on S.M., because it was Mr. Stokes who led the police to S.M.  *Id.* at 8.

ECF 70-6 is the police report as to the events in question.  The defendant is clearly named as the driver of the SUV.  The report does not expressly state that defendant was the sole occupant. It states, "occupied once by a male in the driver's seat later identified as [the defendant]."  "Once" may be a typographical error; perhaps the police meant "only."   In any event, no other occupant was ever mentioned.  And, regardless, defendant was identified as the driver.  The rental agreement is a red herring; drugs were found in the SUV in the very spot where defendant had just been seated.

Certainly, defense counsel would have been misguided if she had suggested to Stokes that he was likely to succeed on his motion to suppress as to the SUV.  And, in the absence of suppression of the contents of the vehicle search, success as to the motion to suppress the statements would have been tantamount to the proverbial "Pyrrhic victory."

If Stokes pursued his suppression motions, he would have lost the deduction he received for acceptance of responsibility under U.S.S.G. § 3E1.1(b).  More significant, if he did not prevail on his suppression motions, and had gone to trial on all three counts, and was convicted, the consequences would have been "dire," as the government suggests.  ECF 70 at 18.  This is because Stokes would have been deemed an armed career criminal and he would have faced a lengthy, congressionally mandated minimum sentence.  Instead, his lawyer negotiated a very favorable Plea Agreement.

At the rearraignment (ECF 64, Transcript), under oath, defendant expressly stated that he was pleading guilty freely and voluntarily, because he was guilty.  *Id.* at 35.  Of significance, he

has not said or shown that, but for the alleged errors of defense counsel, he would not have pleaded guilty to the two offenses.

Stokes also complains that the AFPD failed to negotiate a conditional plea agreement under Fed. R. Crim. P. 11(a)(2). *Id.* at 13. In his view, this constituted, "a complete lack of pretrial preparation . . . ." *Id.* The AFPD has said that she never discussed a conditional plea with Stokes. ECF 70-2 at 2, ¶ 9.

This claim also lacks merit. There is no evidence that such a plea was ever offered by the government or ever would have been offered.[4] *See, e.g., Francis v. United States*, RWT-09-12, 2015 WL 6152649 at *4 (D. Md. Oct. 16, 2015) (stating that failure to discuss a conditional plea "cannot be grounds for ineffectiveness, because there is no evidence indicating that such a plea was ever offered by the government."); *United States v. Carvajal-Mora*, 2009 WL 1563920, at *5 (N.D. Okla. Dec. 21, 2009) ("Conditional pleas are not commonly offered by most prosecutors, and a defendant asserting an ineffective assistance of counsel claim must show that a conditional plea was offered or would likely have been offered if the government's consent to a conditional plea was sought."); *Mackins v. United States*, 2009 WL 5171822, at *6 (W.D.N.C. June 1, 2009) ("Because Petitioner cannot establish that a conditional plea was ever offered or would have been offered, he has failed to carry his burden and his claim of ineffective assistance of counsel on this basis is dismissed.").

In sum, there is no basis to conclude that the AFPD's performance fell below an objective standard of reasonableness on the grounds cited by Stokes. Nor has Stokes shown that, but for his attorney's alleged errors, he would have opted for a motions hearing, or would not have pleaded

---

[4] The prosecutor insists this claim is "baseless.[]" ECF 70 at 32. He states that the claim that "federal prosecutors readily agree to conditional pleas could not be farther from the truth." *Id.* n.8.

guilty, or would have obtained a more favorable plea agreement.  Indeed, to the extent that outcome is a measure of performance, the AFPD achieved a remarkable result.

In Argument II, Stokes contends that he is "actually innocent of the 924(c) [charge] and counsel was ineffective for advising him to plead guilty."  ECF 42 at 13.  In this regard, he maintains that the government could not prove the elements of a § 924(c) offense.

According to Stokes, the government could not show that he "'used or carried a firearm'. . ." because the gun was not in his possession.  ECF 42 at 14.  Moreover, he maintains that the government could never prove "use."  *Id.* at 15.  And, because he did not "'accompany'" the vehicle, he did not carry or possess the weapon.  *Id.* at 16.

Valid actual innocence claims are "rare . . . ."  *McQuigsin v. Perkins*, 569 U.S. 383, 386 (2013).  The actual innocence exception "only applies in limited circumstances."  *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014).  The Fourth Circuit has reiterated, in the context of a habeas case under 28 U.S.C. § 2254:[5]  "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'"  *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 325 (1995)); *see McQuiggin*, 569 U.S. at 386.  Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'"  *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)).  It is an "exacting standard,"

---

[5] "[T]he grounds for relief under § 2255 are equivalent to those encompassed by § 2254 [and] § 2255 was intended to mirror § 2254 in operative effect."  *Davis v. United States*, 417 U.S. 333, 344 (1974).

based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

In order to show "actual innocence," then, the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623. Moreover, the petitioner must meet his burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Jones*, 758 F.3d at 583 (quoting *Schlup*, 513 U.S. at 327); *see House v. Bell*, 547 U.S. 518, 537 (2006); *Bousley*, 523 U.S. at 623.

Stokes's actual innocence claim is specious.

The law requires "a sufficiently close nexus between the firearms and the drugs to conclude that possession of the firearms was 'in furtherance of' drug trafficking." *United States v. Moore*, 769 F.3d 264, 268 (4th Cir. 2014). And, possession is defined to include not only actual physical possession but also dominion and control. *See*, *e.g.*, *United States v. Ledbetter*, 781 Fed. App'x 154, 156-57 (4th Cir. 2019); *United States v. Stephens*, 749 Fed. App'x 178, 179-80 (4th Cir. 2018); *United States v. Squire*, 716 Fed. App'x 156, 159 (4th Cir. 2017).

As stated previously, Stokes was seated in the vehicle in the very spot where drugs were found, in plain view. Other drugs were in the SUV. The weapon was found in the center console, obviously in close proximity to drugs. No other occupant was mentioned. Moreover, as the government observes (ECF 70 at 35), the defendant admitted, under oath, that he possessed the firearm, and that he did so in furtherance of his drug trafficking activity.

24

**IV.**

Stokes also moves to conduct discovery.  ECF 74.  And, he asks the Court to order defense

counsel to provide him with a copy of his PSR.  ECF 61.[6]  Stokes acknowledges that the BOP has

a policy that precludes an inmate from possessing a copy of his PSR.  *Id.* at 2.  But, he argues that

his constitutional right to his "legal material" takes priority.  *Id.*

Stokes has identified five categories of documents that he seeks.  These categories are

gleaned from ECF 74 at 3-9:

> (1) all records relating to his four prior narcotics trafficking convictions, including
> "prior arrest warrants, indictments, plea agreements, sentencing tr[a]nscripts, and
> judgments of convictions . . . ." *Id.* at 3-4.;
>
> (2) to prove corruption of the police officers involved in defendant's case, he seeks
> discovery as to all officers involved in his current offense, and also in connection
> with the four prior narcotics offenses to which he pled guilty in the state court
> system (two in 2006, one in 2008, and the fourth in 2013).  *Id.* at 4-5;
>
> (3) discovery as to the "testing of the Hi-point handgun, ballistics, and fingerprints."
> *Id.* at 5;
>
> (4) evidence that shows he was in knowing possession of a handgun, and knew that
> he was a member of a prohibited class (persons previously convicted of an offense
> potentially subject to a penalty of more than one year of incarceration).  *Id.*[7]
>
> (5) any body camera footage and dashboard camera footage that indicates there was
> another person in the SUV.  *Id.* at 6.

I agree with the government that Stokes has not established good cause for the materials,

as required by Rule 6(a) of the Rules governing Section 2255 proceedings.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to

discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also*

---

[6] As indicated, Stokes also asked the AFPD to provide his client file.

[7] As noted, defendant did not plead guilty to Count One, containing a charge under 18
U.S.C. § 922(g).

*Harris v. Nelson*, 394 U.S. 286, 295 (1969) (stating that the "broad discovery provisions" of the Federal Rules of Civil Procedure do not apply in habeas petitions); *United States v. Saint-Jean*, 684 F. Supp. 2d 767, 773 (E.D. Va. 2010) ("Discovery is extremely limited in habeas corpus proceedings."). Instead, a habeas petitioner "may engage in discovery only with leave of the court, after good cause is shown." *Ramey v. United States*, RWT-12-309, 2014 WL 12661574, at *1 (D. Md. Feb. 14, 2014). And, "good cause" exists under Rule 6(a) when the petition establishes a prima facie case for relief. *Nelson*, 394 U.S. at 290.

Under Rule 6(b), the party requesting discovery must provide "reasons for the request" and "must specify any requested documents." Leave to conduct discovery is appropriate "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Nelson*, 394 U.S. at 300; *see Bracy*, 520 U.S. at 908-09; *United States v. Roane*, 378 F.3d 382, 402-03 (4th Cir. 2004).

Notably, "Rule 6 does not 'sanction fishing expeditions based merely on a petitioner's conclusory allegations.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (citation omitted); *see Teti v. Bender*, 507 F.3d 50, 60 (1st Cir. 2007); *Ramey*, 2014 WL 12661574, at *1. Nor is "good cause" shown "where a defendant bases a discovery request on a claim that fails as a matter of law." *Ramey*, 2014 WL 12661574, at *1 (*citing Thomas v. Taylor*, 170 F.3d 466, 474-75 (4th Cir. 1999)).

When a defendant files a § 2255 motion challenging the validity of his conviction after pleading guilty, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). As discussed, the petitioner must demonstrate that the advice received from his counsel was not "within the range

26

of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771.  This Stokes has not done.

Stokes has failed to establish good cause sufficient to support his discovery requests.  For one, the requests "fall outside the scope of the allegations advanced" in his Petition.  ECF 76 at 5. There, Stokes argues that his counsel was ineffective because she failed to pursue motions to suppress his statements to the arresting officers and the vehicle search (ECF 42 at 4-12) and because she allowed him to plead guilty to Count Three, which alleged a violation of 18 U.S.C. § 924(c), despite the fact that he was actually innocent of the charge. ECF 42 at 12-16.  Yet, in his discovery motion, Stokes seeks to explore other contentions: (1) that one or more of his prior felony narcotics convictions may not have qualified as a "serious drug offense" under 18 U.S.C. § 924(e)(2)(A), ECF 78 at 3-4; (2) that corrupt Baltimore police may have planted the drugs found in his car; (3) that he should be allowed to conduct discovery as to the testing of the handgun that was recovered from the center console of the vehicle he was driving on the night of his arrest; (4) that all dashboard camera or body camera videos taken by the arresting officers on the night of his arrest should be produced to him; and (5) that the government should be required to prove that he knew he was a member of a prohibited class and was barred from possessing a firearm (citing *Rehaif v. United States*, ___ U.S. ___, 139 S. Ct. 2191 (2019)).

There is no basis for the requested discovery.

## V.    Conclusion

For the foregoing reasons, I shall deny the Petition.  A Certificate of Appealability shall not issue.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order

adverse to the applicant.  A COA is a "jurisdictional prerequisite" to an appeal from the court's order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007).  In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).[8]

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Buck*, 137 S. Ct. at 773.  Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Petitioner has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.

An Order follows.


Date:   April 29, 2021                                     _____/s/_____
                                                           Ellen L. Hollander
                                                           United States District Judge

---

[8] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.